would seem reasonable, under the words of the agreement, that there should not only be a reasonable allowance for the toll of the grain used in the family of the plaintiff, but also for that of his horses and other stock on the farm, at a moderate computation. Vid. 1 Vez. 56. On this point however, the court gave no decided opinion, but submitted it to the judgment of the jury.

 Verdict *pro quer.* for 34*l.* 1*s.* 3*d.* damages, and six pence costs.

 Messrs. Duncan and Watt, *pro quer.*

 Messrs. Hamilton and C. Smith, *pro def.*

------------------

### Lessee of Robert Lowrey *against* James Gibson.

Vacating warrants have generally issued under special equitable circumstances which will be presumed after a length of possession, without positive evidence.

One having a warrant and not following it up with diligence, or taking possession, but silently permitting others to improve, shall be postponed.

Certificate of the surveyor general and receiver general not on oath, respecting the practice of the land office, no evidence.

Ejectment for 200 acres of land in Hopewell township, brought in the Common Pleas to October term 1781.

The plaintiff claimed under a survey of 200 acres made by Thomas Cookson, deputy surveyor, on the 11th September 1744, marked, " surveyed on a ticket, warrant to be made out, " and a subsequent warrant to the lessor of the plaintiff for 100 acres of land in Hopewell township, adjoining the land of John Finley, dated 18th February 1744-5. Both the survey and warrant were indorsed, " vacated and returned for the use of George Croghan."

The vacating warrant was dated 22d June 1749, in favor of the said George Croghan, and recited that " the conditions of the former warrant had not been complied with. " The defendant claimed under a patent issued on the day following to Croghan, in consideration of 31*l.*

It did not appear that any money had been paid by Lowrey, when he obtained his warrant, or that he had ever been in the actual possession of the lands in question.

On the contrary, it was sworn by one witness, that in 1779, he wished to buy the lands for the lessor of the plaintiff, and offered him 100*l.* for them, if he would make him a good title. He then inquired of Lowrey, whether he had not contracted with Croghan for the tract, to which the other replied in the affirmative, but that he had received from him only 6*l.* The land was then uncleared ; but now almost all of it was in cultivation.

The plaintiff's counsel contended warmly, that vacating warrants were utterly against law, unless preceded by an actual entry. The late proprietaries were as much bound by settled legal principles, as any individuals. No private person, after any lapse of time however great, could annul by their own power a contract of sale, by a memorandum indorsed thereon. Warrants to survey lands recite the agreement of the parties, the terms of purchase and the time of payment. Money was commonly paid on the issuing of the warrant, and so the jury would presume in the present instance, though no proof was given of it.

At all events, a warrant effected an estate on condition ; and in case of a condition broken, the law was clear, that a re-entry was necessary to defeat the first estate granted. Co. Lit. 202, b. 218, a. b. 2. Bl. Com. 155. Supposing it to be a mere agreement for the sale of lands, the vendor after he had contracted to sell stands in trust for the vendee. 1 Cha. Ca. 39. 2 Vent. 853. 5 Vin. 538, pl. 20. 1 Pow. on Cont. 431.

The maxim in equity is clearly established, that what ought to be done, shall be taken as done. 3 Wms. 215. 3 Bl. Com. 438. 2 Vez. 631, 638. And a covenant for a valuable consideration is in equity tantamount to a conveyance. Powel on Devises, 594.

When there is a condition for the payment of money, the court will grant relief. 1 Stra. 453. If paid with interest, it is sufficient. 1 Fonbla. 338. The prevailing distinction in equity, is to relieve against conditions, as well precedent as subsequent, where compensation can be made. 1 Eq. Ca. Ab. 108. Ambl. 511, 514. 1 Salk. 156. 1 Cha. Ca. 49. 96. 12 Mod. 184. 2 Vern. 222, 366, 594. But this condition is not precedent to the vesting of the estate. It is similar to the case in Gilb. Equ. Rep. 43. Prec. Cha. 387. S. C. *in totidem vervis.*

The clause usual in all warrants, that " in case the party fulfills his agreement within six months from the date, the warrant and survey shall be valid, otherwise void, " has never been construed with the strictness contended for by the defendant ; and if such was the law, the most pernicious consequences might ensue to the community. A custom to vacate the warrants has never existed, where surveys have been made on them, and such warrants have never prevailed, unless by the agreement of the party who took out the first right. There would seem to be some favoritism in the proprietary offices, in the present solitary instance.

Admitting that no money was paid on the warrant, and that no survey had been made thereon, still the title is in the plaintiff. The ejectment was brought before the limitation act, (2 Dall. St. Laws 281) which recognizes such titles. Subsisting rights

under the late proprietaries, have been protected by laws passed since the revolution, as in § 5 of the act of 9th April 1781. (Loose acts, pa. 423, 424.) § 5 of the act of 5th April 1782. (2 Dall. St. Laws 23.) and in § 5 of the act of 1st April 1784. (2 Dall. St. Laws 203.) Numerous laws have likewise extended the periods for patenting of lands, and by an act of the last sessions, 1st April 1796, it is now prolonged to 1st December 1797, and from thence to the end of the next sessions of assembly. 4 Dall. St. Laws 48.

It is matter of common observation, that a license, location, or lottery ticket, will give a good right. Here the defendant claims under a warrant granted to Croghan, who was conusant of the plaintiff's title ; and this notice shall be carried down to the defendant himself.

The defendant's counsel argued, that whatever effect the words of warrant might have, the fact was notorious, that many valuable title depended on vacating warrants, which it would be highly dangerous now to unsettle.

The late proprietaries, as lords of the soil, granted their lands in their own mode, and in many instances adopted the practice of issuing vacating warrants.

The proof of particular equitable circumstances, inducing them thereto, cannot reasonably be expected after a great lapse of time. They will be presumed after a length of years and possession. Cawp. 108, 214. Livery and seisin shall be presumed after a possession of twenty-five years. 12 Vin. 126.

Cases have occured of warrants having been granted where no money has been paid, though it is admitted they are rare, but from no proof being given of such payment, the jury should not conclude there was money paid.

Though an individual cannot by his own act defeat a purchase made from him, yet chancery would not decree the specific execution of a stale agreement; and hence it is, that warrants and locations not pursued up with proper diligence, will not give a title to lands. One coming to be relieved against a forfeiture, must claim within a reasonabel time. 1 Vern. 450. One conusant of his right, suffering another to build on his land shall be postponed. 2 Atky. 89. A defective estate shall not be aided against one who has the estate on good consideration. 2 Com. Dig. 173.

It never could have been the intention of the legislature to protect such titles as the plaintiff's, where so great negligence has occured. A long possession is always preferred to an ancient deed. 12 Vin. Abr. 246.

The court recommended to the counsel to state the case, in order that the legal point respecting vacating warrants, might be solemnly settled in bank ; but they declined it on each side.

The court then summed up the evidence to the jury, and premised, that in all cases where there had been great length of possession, and improvements made under a complete legal title, the jury should be very cautious before they find a verdict against such person.

As to vacating warrants, many titles depended upon them. Whether the common provisions in warrants, that "if the agreement was not fulfilled in six months, the warrant and survey should be void," were limitations or conditions, the court would not now determine, nor what was the strict legal operation of such warrants, giving a surveyor an authority to survey and make return of lands. Certainly, the party in whose favor the warrant issued, might abandon his claim, forfeit it by great laches and neglect, or in those early times sell and transfer it by parol. Where one has (2 Equ. Ca. Ab. 16, 668. 5 Vin. Ab. 538. 1 Fonbla. 384) trifled or shown a backwardness in performing his part of the agreement, chancery will not decree a specific execution. So, where a contract has laid (2 Equ. Ca. Ab. 19. 2 Wms. 82. 9 Mod. 2. 5 Vin. Ab. 534. pl. 38) dormant many years.

When a warrant right therefore has not been pursued within a reasonable time, owing to such circumstances as have been before stated, or of a like kind, the proprietary officers pursued the custom of issuing vacating warrants, and such power in the settlement of a young country was absolutely necessary for the common welfare. It was not the usage to grant them, unless after full inquiry, and the special equitable circumstances thus ascertained, were never recited in the vacating warrants. The proprietaries were not in the habit of hunting for forfeitures, or of strictly exacting them. Some proof of a sale by Lowrey to Croghan has been produced ; but, from the length of time since the transaction happened, itwould be reasonable to presume some grounds no which the avcating warrant issued, if no such evidence had been given. The law greatly favors a long possession ; and it is fair, just and legal, to presume a contract of the lessor of the plaintiff with Croghan, without positive testimony. An act of parliament may be presumed ; a grant may be presumed from great length of possession. Cowp. 215. No evidence has been given of any collusion between the proprietary officers and Crogham, though it has been strongly insinuated. Supposing however, the complete legal right of the defendant out of the question, and that he relied solely on his possession, and those who preceded

him,how would the case stand.   The survey was made on a ticket previous to the plaintiff's warrant,  which does not appear to have been accepted in the proper offices, whether he paid money on his warrant or not, of which there  is  no  evidence.   If he did not, with due diligence follow up his warrant, lay by thirty-seven years before hebrought his ejectment(which is near fifteen years ago) took no possession, nor did any act of ownership, but silently permitted others to improve the soil by their labours, he cannot now expect to succeed on any principle of law or equity.

In the course of the trial, the defendant's counsel offered in testimony the certificate of the surveyor general and receiver general, as to the ancient practice of the land office in issuing vacating warrants ; which was excepted to, being *ex parte* and not on oath.    And 1 Black. Rep. 29, was cited for the defendant, that the certificate of the secretary of war, though opposed, was allowed as evidence of the station of a serjeant in the army.

The court ovverruled the evidence, and observed, that the case cited was on a *habeas corpus*, for the opinion of the court, whether a serjeant was not equally privileged from arrests under the mutiny act, as a private soldier ; it did not respect evidence offered to a jury.

Verdict for the defendant.

Messrs. Duncan and C. Smith, *pro quer*.
Messrs. Hamilton and Bowie, *pro def*.

---

Lessee of ROBERT DUNNING, WILLIAM DUNNING, JOHN DUNNING, EZEKIEL DUNNING, and MARK DUNNING *against* MARTIN WASHMUDT.

Order of the board of property may be read in evidence respecting the survey under which one of the parties claims, though the caveat was filed by a third person.

Ejectment for  23  acres  and  128 perches of land in West Pennobro' township.

The lessors of the plaintiff claimed as children of John Dunning, under two warrants dated 1743, and a survey thereon of 219 acres and 145 perches, made by John Armstrong, deputy surveyor, on the 19th June 1764, returning 173 acres and 132 perches part thereof, as claimed by Thomas Calhoon, in right of a grant to his father John Calhoon.